USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 11/16/11

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------ X

BERNARD BELAIR,

                Plaintiff,

           - against -

MGA ENTERTAINMENT, INC.,

                Defendant.

------------------------------------------------ X

**OPINION AND ORDER**

**09 Civ. 8870 (SAS)**

SHIRA A. SCHEINDLIN, U.S.D.J.:

## I.   INTRODUCTION

       The Brooklyn photographer Bernard Belair brings this action against the California corporation MGA Entertainment, Inc., alleging that MGA's Bratz line of dolls unlawfully infringes on a copyrighted image that he created for a Steve Madden shoe advertisement. MGA has moved for summary judgment. Because no reasonable trier of fact could find that any of the Bratz dolls are substantially similar to the figures depicted in Belair's copyrighted image, MGA's motion is granted.

## II.   BACKGROUND

       In the late 1990s, Belair created a series of images to be used in

advertisements for Steve Madden shoes.[1]  Belair obtained copyrights for a number
of those images, including copyright registration no. VA 1-146-749, for an image
entitled "Angel / Devil Girl."[2]  The image depicts two figures standing side-by-side
on an empty cobblestone street in an urban landscape.[3]  Although the women
resemble humans, they have extremely long limbs, large heads, and tiny torsos.
One of them ("Devil") has horns and a tail; the other ("Angel") has wings and a
halo.  The image incorporates numerous photographs of the same female model
with features that have been manipulated and altered.[4]

      Sometime around August, 1998 Carter Bryant, who was working for
the toy maker Mattel at the time, conceived of the Bratz dolls. He envisioned a
group of four young friends who are very cool and popular, wear trendy clothing,
and have a "we can do anything, we've got a lot of power, we believe in ourselves"

---

[1]    Defendant's Separate Statement Pursuant to Local Civil Rule 56.1
("MGA 56.1") ¶ 3; Plaintiff Bernard Belair's Response to Defendant MGA
Entertainment, Inc.'s Statement Pursuant to Local Civil Rule 56.1 ("Belair 56.1") ¶
3.

[2]    MGA 56.1 ¶¶ 4-5; Belair 56.1 ¶¶ 4-5.

[3]    *See* Angel / Devil Girl, Ex. 1 to Declaration of Gerard A. Haddad,
plaintiff's counsel, in support of Plaintiff Belair's Opposition to MGA's Motion
for Summary Judgment ("Haddad Decl.").

[4]    Belair 56.1 ¶ 282; Reply to Plaintiff's Response to Defendant MGA
Entertainment, Inc.'s Statement of Material Facts ("MGA 56.1 Reply") ¶ 282;
Deposition of Bernard Belair, Ex. 12 to Haddad Decl., at 145:19.

attitude.[5]  By September, 2000 Bryant had moved from Mattel to MGA and had

taken his idea for the Bratz dolls with him.[6]  At MGA, he gave preliminary

drawings to Margaret Leahy, a sculptor, who created the first prototype, or

"sculpt," for the dolls.  For additional inspiration, he gave her a copy of the Angel /

Devil image, from the Belair photograph, which had appeared in the the August,

1999 edition of *Seventeen* magazine.[7]  Leahy hung the image on her wall by her

workspace and used it to help her create the initial Bratz sculpt.[8]

       The first line of Bratz dolls – named Cloe, Sasha, Yasmin, and Jade –

arrived in toy stores in 2001.[9]  Over the following decade, the Bratz brand proved

hugely popular, with over 380 million Bratz products sold worldwide and over two

---

[5]     Reporter's Transcript of Jury Trial Proceedings ("Trial Tr."), *Mattel Inc. v. MGA Entertainment, Inc.*, No. 04 Civ. 9049 (C.D. Cal. June 17, 2008), Ex. H to Declaration of Kenneth A. Plevan, defendant's counsel, in support of MGA Entertainment Inc.'s Motion for Summary Judgment ("Plevan Decl."), at 2810-2811.

[6]     The details of Carter's move from Mattel to MGA have been the subject of extensive litigation. *See Mattel Inc. v. MGA Entertainment, Inc.*, 616 F.3d 904 (9th Cir. 2010); *Mattel Inc. v. MGA Entertainment Inc.*, 782 F. Supp. 2d 911 (C.D. Cal. 2011).

[7]     *See* Trial Tr. at 4144-46.

[8]     *See id*.; Belair 56.1 ¶ 266; MGA 56.1 Reply ¶ 266.

[9]     Annexed to this opinion as Exhibits A through F are the Angel / Devil image, photographs of the four original Bratz dolls, and a photograph of the final sculpt that the four dolls all share.

billion dollars in United States revenue.[10]

## III.   LEGAL STANDARD

### A.   Summary Judgment

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[11]   "'An issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  A fact is material if it might affect the outcome of the suit  under the governing law.'"[12]

"The moving party bears the burden of establishing the absence of any genuine issue of material fact."[13]  "When the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the nonmovant's claim."[14]  In turn, to defeat a motion for summary judgment, the non-moving party

---

[10]      MGA 56.1 ¶¶ 13-14; Belair 56.1 ¶¶ 13-14.

[11]      Fed. R. Civ. P. 56(a).

[12]      *Fincher v. Depository Trust & Clearing Corp.,* 604 F.3d 712, 720 (2d Cir. 2010) (quoting *Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008)).

[13]      *Zalaski v. City of Bridgeport Police Dep't*, 613 F.3d 336, 340 (2d Cir. 2010).

[14]      *Cordiano v. Metacon Gun Club, Inc.*, 575 F.3d 199, 204 (2d Cir. 2009).

must raise a genuine issue of material fact.  To do so, the non-moving party "'must do more than simply show that there is some metaphysical doubt as to the material facts,'"[15] and "'may not rely on conclusory allegations or unsubstantiated speculation.'"[16]

In deciding a motion for summary judgment, a court must "construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant."[17]  However, "'[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.'"[18] "'The role of the court is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried.'"[19]

## B.    Copyright Infringement

[15]    *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)).

[16]    *Id.* (quoting *Federal Deposit Ins. Corp. v. Great Am. Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010)).

[17]    *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011) (internal quotation omitted).

[18]    *Kaytor v. Electric Boat Corp.*, 609 F.3d 537, 545 (2d Cir. 2010) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)) (emphasis removed).

[19]    *Brod*, 653 F.3d at 164 (quoting *Wilson v. Northwestern Mut. Ins. Co.*, 625 F.3d 54, 60 (2d Cir. 2010)).

5

To prove infringement under the Copyright Act,[20] "'a plaintiff with a valid copyright must demonstrate that: (1) the defendant has actually copied the plaintiff's work; *and* (2) the copying is illegal because a substantial similarity exists between the defendant's work and the protectible elements of plaintiff's [work].'"[21]

### 1.    Actual Copying

The first element – actual copying – may be established by direct or indirect evidence.[22]  For the purposes of this motion, MGA does not dispute that it actually copied the Angel / Devil image.[23]

### 2.    Substantial Similarity to Protectible Elements

"[C]opyright protection may extend only to those components of a work that are original to the author."[24]  "Original, as the term is used in copyright,

---

[20]     *See* 17 U.S.C. § 101 *et seq.*

[21]     *Mannion v. Coors Brewing Co.*, 377 F. Supp. 2d 444, 449 (S.D.N.Y. 2005) (emphasis in original) (quoting *Knitwaves, Inc. v. Lollytogs Ltd.*, 71 F.3d 996, 1002 (2d Cir. 1995)).  *Accord Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991); *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 51 (2d Cir. 2006).

[22]     *See Boisson v. Banian, Ltd.*, 273 F.3d 262, 267 (2d Cir. 2001).

[23]     *See* Memorandum of Law in Support of Defendant MGA Entertainment, Inc.'s Motion for Summary Judgment at 11.

[24]     *Feist*, 499 U.S. at 348.

means only that the work was independently created by the author . . . , and that it

possesses at least some minimal degree of creativity."[25]  Of course, it is axiomatic

that copyright protection only extends to the particular expression of an idea – not

the idea itself.[26]  Thus, under the doctrine of scènes à faire, "elements of an image

that flow naturally and necessarily from the choice of a given concept cannot be

claimed as original."[27]

       A photograph may be original in the rendition of a subject.  Rendition

concerns not "*what* is depicted, but rather *how* it is depicted."[28]  Originality in

---

[25]    *Id.* at 345.

[26]    *See Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 67 (2d Cir. 2010) ("This principle, known as the 'idea/expression dichotomy,' 'assures authors the right to their original expression, but encourages others to build freely upon the ideas and information conveyed by a work.'" (quoting *Feist*, 499 U.S. at 349-50)).

[27]    *Bill Diodato Photography, LLC v. Kate Spade, LLC*, 388 F. Supp. 2d 382, 392 (S.D.N.Y. 2005) (finding that two photographs shot through the opening below a bathroom stall door of a woman's feet astride a toilet, showcasing her stylish shoes, did not share protectible original elements:  all of the elements for which plaintiff sought protection – "the legs and handbags . . . framed by the floor and bathroom walls," "shoot[ing] a photograph of the bottom part of a woman's legs in a bathroom or on a toilet," etc. – stemmed from the choice of the idea, namely "the depiction of a woman's feet as she sits on the toilet, used as a striking device to highlight fashion accessories," and were therefore unprotectible).  *Accord Williams v. Crichton*, 84 F.3d 581, 587-88 (2d Cir. 1996) ("[s]cènes à faire are unprotectible elements that follow naturally from a work's theme rather than from an author's creativity").

[28]    *Mannion*, 377 F. Supp. 2d at 452.

7

rendition may reside in the photographer's selection of lighting, shade, lens, angle, depth of field, composition, and other choices, such as manipulation of color balance, saturation, or contrast, that have an aesthetic effect on the final work.[29]

A photograph may also be original in the creation of its subject, when a photographer orchestrates the situation that is photographed, rather than simply photographing a ready-made scene or thing.[30]  Thus, "if a photographer arranges or otherwise creates the object that his camera captures, he may have the right to prevent others from producing works that depict that subject."[31]

"'The standard test for substantial similarity between two items is whether an ordinary observer, unless he set out to detect the disparities, would be

---

[29]     *See, e.g.*, *Leibovitz v. Paramount Pictures Corp.*, 137 F.3d 109, 116 (2d Cir. 1998); *Rogers v. Koons*, 960 F.2d 301, 307 (2d Cir. 1992).

[30]     *See, e.g.*, *Burrow-Giles Lithographic Co. v. Sarony*, 111 U.S. 53 (1884) (originality of Oscar Wilde portrait founded upon overall composition, including pose, wardrobe, and background, "suggesting and evoking the desired expression"); *Rogers*, 960 F.2d at 304 (holding that plaintiff's copyright in photograph, which depicted an arranged scene of a man and woman on a park bench with eight puppies on their laps, protected against the defendant's attempt to replicate the subject matter of the photograph in a three-dimensional sculpture; emphasizing the detailed selection of "the location, the bench on which the [subjects] are seated and the arrangement of the small dogs").

[31]     *Mannion*, 377 F. Supp. 2d at 450.

8

disposed to overlook them, and regard the aesthetic appeal as the same.'"[32]  "In

applying the so-called 'ordinary observer test,' we ask whether 'an average lay

observer would recognize the alleged copy as having been appropriated from the

copyrighted work.'"[33]  However, "in looking at . . . two works of art to determine

whether they are substantially similar, focus must be on the similarity of the

*expression* of an idea or fact, not on the similarity of the facts, ideas or concepts

themselves."[34]

        "[W]hen faced with works 'that have both protectible and

unprotectible elements,'" the usual "ordinary observer" test becomes "more

discerning,"[35] and the Court "must attempt to extract the unprotectible elements

from . . . consideration and ask whether the protectible elements, standing alone,

are substantially similar."[36]  "No matter which test we apply, however, we have

disavowed any notion that we are required to dissect [the works] into their separate

components, and compare only those elements which are in themselves

---

[32]        *Gaito*, 602 F.3d at 66 (quoting *Yurman Design, Inc. v. PAJ, Inc.*, 262
F.3d 101, 111 (2d Cir. 2001)).

[33]        *Id.* (quoting *Knitwaves*, 71 F.3d at 1002).

[34]        *Rogers*, 960 F.2d at 308 (emphasis in original).

[35]        *Gaito*, 602 F.3d at 66 (quoting *Fisher-Price, Inc. v. Well-Made Toy
Mfg. Corp.*, 25 F.3d 119, 123 (2d Cir. 1994)).

[36]        *Id.* (quotation omitted).

9

copyrightable."[37]  The court is also guided "by comparing the contested design's 'total concept and overall feel' with that of the allegedly infringed work,"[38] and it recognizes that "'the defendant may infringe on the plaintiff's work not only through literal copying of a portion of it, but also by parroting properties that are apparent only when numerous aesthetic decisions embodied in the plaintiff's work . . . are considered in relation to one another.'"[39]  It is well established that "substantial similarity may be found even where the protected work and the accused work exist in entirely different media."[40]  Thus, "a three-dimensional object can infringe a copyright in a two-dimensional object."[41]

### 3.    Statute of Limitations

---

[37]    *Id.* (quotation omitted).

[38]    *Id.* (citing *Tufenkian Import/Export Ventures v. Einstein Moomjy, Inc.*, 338 F.3d 127, 133 (2d Cir. 2003)).

[39]    *Canal+ Image UK Ltd. v. Lutvak*, 773 F. Supp. 2d 419, 436 (S.D.N.Y. 2011) (quoting *Tufenkian*, 338 F.3d at 134).

[40]    *LaChapelle v. Fenty*, — F. Supp. 2d —, No. 11 Civ. 945, 2011 WL 2947007, at *3 (S.D.N.Y. July 20, 2011). *See, e.g.*, *Rogers*, 960 F.2d 301 (finding substantial similarity where a sculpture was modeled after a photograph). *See also* 4 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 2.08 at 2-127 to 2-128 ("Nimmer") ("It is, of course, fundamental that copyright in a work protects against unauthorized copying, not only in the original medium in which the work was produced, but also in any other medium as well.  Thus, copyright in a photograph will preclude unauthorized copying . . . in any other form.").

[41]    *Ideal Toy Corp. v. Kenner Prods. Div. of General Mills Fun Group*, 443 F. Supp. 291, 301 (S.D.N.Y. 1977).

Copyright infringement claims must be "commenced within three years after the claim accrued."[42] Where multiple acts of infringement are alleged, only those outside the three year window will be barred.[43] "Although the Copyright Act is silent as to when the claim accrues and the Court of Appeals has not yet addressed the issue, the majority of courts in this Circuit have most recently concluded that a copyright claim accrues at the time of infringement, rather than at the time of discovery."[44]

## IV.   DISCUSSION

### A.   Substantial Similarity

Because MGA has acknowledged that it copied Belair's Angel / Devil image when making the original sculpt for the Bratz dolls, the normal two-pronged inquiry is reduced to one: could a reasonable juror find a substantial similarity between the Bratz dolls and the protectible elements of the image?

As a threshold matter, I consider which elements of the image are *not* protectible – namely, the common theme of a young, attractive, fashionable woman

---

[42]   17 U.S.C. § 507(b).

[43]   *See Kwan v. Schlein*, 634 F.3d 224, 228 (2d Cir. 2011).

[44]   *Harris v. Simon & Schuster, Inc.*, 646 F. Supp. 2d 622, 630 (S.D.N.Y. 2009) (citing to *Auscape Int'l v. National Geographic Soc.*, 409 F. Supp. 2d 235 (S.D.N.Y. 2004)).

and the elements that "flow naturally and necessarily from the choice"[45] of that subject. These elements, as the Ninth Circuit explained in *Mattel v. MGA Entertainment*, include idealized physical proportions such as "slightly larger heads, eyes and lips; slightly smaller noses and waists; and slightly longer limbs than those that appear routinely in nature."[46] Such exaggerated and idealized proportions are (distressingly) commonplace in both children's toys and the fashion industry,[47] and Belair cannot assert a protectible claim to them. The elements of Belair's image that are not protected also include the concepts of women's fashionable clothing, high-heeled shoes and boots, and heavy use of makeup. These all flow naturally from the choice to produce a fashion doll for children's play. In order to survive this motion, Belair must show that a reasonable juror could find that MGA's expression of these concepts in the Bratz dolls is substantially similar to his particular and original expression of them in the Angel / Devil image.

---

[45]     *Diodato*, 388 F. Supp. 2d at 392.

[46]     *Mattel*, 616 F.3d at 915.

[47]     *See, e.g.*, photographs of advertisements, Ex. K to Plevan Decl. at 4, 6, 7, 8, 14, (showing exaggerated and idealized female physiques in advertisements from the August, 1998 issue of *Seventeen* magazine), photographs of advertisements, Ex. L to Plevan Decl. at 5, 8, 12, 13, (same, from the August, 1999 and March, 2000 issues of *Seventeen*).

The original Bratz dolls all have precisely the same physique because they were constructed using a common sculpt.[48]  Among other features, the sculpt has extremely long and skinny limbs, an unnaturally narrow waist and wide hips, an oversized and round head, a small nose and ears, and bow lips.[49]  In and of themselves, such features cannot be protected by copyright. But some of the specific proportions of the Bratz sculpt appear similar to Angel's proportions and distinctly unlike most humans'.  For example, both Angel and the sculpt have a head that is approximately 25 percent the height of her entire body and a waist that is 50 percent the width of her head.[50]

Of course, there is a limited range of proportions available to a photographer or doll maker seeking to depict a stereotypically attractive young woman.  "Similarity of expression . . . which necessarily results from the fact that the common idea is only capable of expression in more or less stereotyped form

---

[48]     *See* Declaration of Paula Garcia, vice president of product design and development at MGA, in Support of Defendant MGA Entertainment, Inc's Motion for Summary Judgment ("Garcia Decl.") ¶ 5. Photographs of the dolls and the sculpt were filed as Exhibits 1 through 5 to the Garcia declaration.  Tangible versions of the dolls and sculpt were provided to the Court.

[49]     *See* Sculpt, Ex. 5 to Garcia Decl.

[50]     *See id.*; Angel / Devil Girl, Ex. 1 to Haddad Decl.

13

will preclude a finding of actionable similarity."[51]  As the Ninth Circuit put it, "features can be exaggerated only so much: Make the head too large or the waist too small and the doll becomes freakish, not idealized. The expression of an attractive young, female fashion doll with exaggerated proportions is thus highly constrained."[52]  Under copyright law, mimicking stereotypes is less problematic than mimicking distinctive attributes.[53]

A discerning eye notes numerous differences between the physique of the Bratz sculpt and that of Angel and Devil.[54]  For example, the bridge of Angel's nose is flat and wide and her eyes are significantly farther apart than the sculpt's. She has teeth and nostrils; the sculpt and the Bratz dolls have neither.  Her ears are significantly larger than the sculpt's and are lower down on her face. Her shoulders

---

[51]     *Durham Indus., Inc. v. Tomy Corp.*, 630 F.2d 905, 916 (2d Cir. 1980).

[52]     In the Ninth Circuit, the limited range of available expression for depicting an idealized human body means that in this situation, Belair would need to show that the dolls' physique is "nearly identical" to that of his images.  *See Mattel*, 616 F. 3d at 914. The Second Circuit does not use this test.  Instead, the "ordinary observer" test simply becomes "more discerning."  *Gaito*, 602 F.3d at 66.

[53]     "Similarity as to standard doll features is not as indicative of copying as would be similarity of features that render the protected toy distinctive." *Durham Indus.*, 630 F. 2d at 916.

[54]     *See* Sculpt, Ex. 5 to Garcia Decl.; Angel / Devil Girl, Ex. 1 to Haddad Decl.

form a right angle with her neck, whereas the sculpt's shoulders slope down. Angel's fingers are curled; the sculpt's are nearly straight. Angel has feet, which the basic sculpt lacks, and she has five toes, which all of the Bratz dolls lack.[55]

Devil is also different from the sculpt. She has narrow eyes in deep sockets protected by a prominent brow; the sculpt's brow is almost non-existent. Devil has comically pointed ears; the sculpt's ears are round. Devil has no discernable breasts; the sculpt does. Devil has a pointed chin; the sculpt's chin is rounded.

Despite these differences, the similarities between the sculpt and the Devil / Angel image are significant. If MGA were selling the sculpt as a final product, there might well be a triable issue of fact regarding copyright infringement. But Belair's complaint alleges that it is the Bratz line of "dolls, toys, games, and videos" that infringes on his copyrighted image.[56] The sculpt is not available for purchase. It is only one component of some of the Bratz dolls and is not incorporated at all into many of the Bratz toys, games, and videos.

The fact that the Bratz sculpt is similar to the Belair image is not

---

[55]   *See* Angel / Devil Girl, Ex. 1 to Haddad Decl.; Cloe, Ex. 1 to Garcia Decl.; Jade, Ex. 2 to Garcia Decl.; Sasha, Ex. 3 to Garcia Decl.; Yasmin, Ex. 4 to Garcia Decl; Sculpt, Ex. 5 to Garcia Decl.

[56]   Second Amended Complaint ¶ 49.

dispositive because the physical differences between Belair's women and the model sculpt pale in comparison to the differences between Belair's women and the painted, clothed, and made-up Bratz dolls that are packaged and sold as finished products. No reasonable juror could find that those final products are substantially similar to Belair's image.

Belair's Angel is wearing a tiny pink tank-top that exposes her midriff, tight blue jeans that are folded up to her calf, and white, open-toed high-heeled shoes. His Devil is wearing a black leather jacket, a black mini skirt, black calf-high leather platform boots, and a black choke collar. Angel's dark hair is held back and curls down to the sides of her head. Devil's dark hair shoots up in an elaborate wave.

None of the Bratz dolls are dressed in substantially similar fashion. Cloe, one of the original four Bratz dolls, is wearing glittery denim bell bottoms that cover her feet, a turquoise tank top with the word "Angel" and a small halo printed on it, a large turquoise belt, turquoise closed-toed platform shoes, and a turquoise patterned headband. Her straight platinum blond hair reaches below her buttocks. Unlike Angel and Devil, who both have very dark eyes, Cloe's are blue. Whereas Angel and Devil appropriately sport accessories including a halo and wings, and horns and a tail, respectively, Cloe has only a white spotted backpack

16

and a turquoise hair band.

Cloe made her debut alongside Sasha, who wears an orange long-sleeved top, a floor-length blue and orange shirt, a glittery silver beanie, and orange and white platform sneakers.  She has green and brown eyes, extremely long black hair, and a light blue backpack depicting a rabbit and the words "hip hop."  Sasha has darker skin than either Devil or Angel.  Yasmin and Jade, who round out the initial four Bratz dolls, are dressed in equally individualized fashion that is not similar to either Angel's or Devil's; neither of them has dark eyes and each of them has hair that falls below her waist.

Given the similarity in head, limb, and torso proportions between the dolls and Angel, do these extensive dissimilarities matter?  Professor Nimmer asserts that it "is entirely immaterial that, in many respects, plaintiff's and defendant's works are dissimilar, if in other respects, similarity as to a substantial element of plaintiff's work can be shown."[57]  The requisite citation is to Judge Hand: "[N]o plagiarist can excuse the wrong by showing how much of his work he did not pirate."[58]

But, of course, in the absence of partial literal similarity, enough

---

[57]    Nimmer § 13.03[B][1][a], at 13-62.

[58]    *Sheldon v. Metro-Goldwyn Pictures Corp.*, 81 F.2d 49, 56 (2d Cir. 1936).

dissimilarities may eventually eliminate the claim of substantial similarity. This is particularly so, as Judge Newman of the Second Circuit has explained, in the context of graphical and three-dimensional works, which are perceived in their entirety (unlike literary works, which can perhaps more naturally be perceived piece by piece, in linear fashion, and where additional dissimilarities may not detract from previous similarities).[59]  Professor Nimmer recognizes this as well:

> [I]f the points of dissimilarity not only exceed the points of similarity, but indicate that the remaining points of similarity are (within the context of plaintiff's work) of minimal importance either quantitatively or qualitatively, then no infringement results.[60]

In the context of toys, and particularly toys that replicate human or quasi-human forms, differences in physical features, clothing, and accoutrements matter.  Thus, one small, plastic, baby doll with a big head, broad face, and wide eyes that is dressed only in a diaper and crawls along the ground after being wound up will not infringe on another doll that shares all of those attributes if the two have different colored hair and diapers, slightly different facial features, and other

---

[59]     *See Warner Bros., Inc. v. American Broadcasting Cos.*, 720 F.2d 231, 241 (2d Cir. 1983) ("Significant dissimilarities between two works of this sort inevitably lessen the similarity that would otherwise exist . . . .").  *Accord Durham Indus.*, 630 F.2d at 913.

[60]     Nimmer § 13.03[B][1][a], at 13-63.

small differences.[61]  Similarly, the Second Circuit has found that two plush

snowmen toys that are the same height, have the same black button eyes, and have

v-shaped mouths, red buttons, and a black hat are not substantially similar because

"the snowmen's nose widths, lip lengths, eye spaces and button diameters differ by

fractions of an inch" and they contain different stiching and contours.[62]

   That logic applies here as well. The Bratz dolls and the figures in

Angel / Devil Girl do share similarly large heads, long limbs, and thin waists.  That

is no surprise.  The Bratz dolls were initially modeled after the Belair figures.  But

in their transformation from a photograph to tangible figures,  the Bratz dolls have

been molded, painted, and dressed so that they no longer look like the Devil and

the Angel.

   It is undisputed that MGA was aware of the Steve Madden look and

sought to capitalize on it.  But that is not enough to justify a finding of

infringement.[63]  "Stirring one's memory of a copyrighted character is not the same

---

[61] *See Durham Indus.*, 630 F.2d at 915.

[62] *Eden Toys, Inc. v. Marshall Field & Co.*, 675 F.2d 498, 501 (2d Cir. 1982) (Lumbard, J., dissenting) (characterizing the majority opinion).

[63] *See Ideal Toy Corp.*, 443 F. Supp. at 304 (holding that there is no right "to a monopoly in the theme of a black-robed, helmeted, evil figure in outer-space conflict with a humanoid and a smaller non-humanoid robot" and refusing to find probable success on the merits even though the challenged toys, packaged and sold as the "Star Team" only months after the release of the hugely popular "Star Wars"

as appearing to be substantially similar to that character, and only the latter is infringement."[64]  Although the Bratz dolls may indeed bring to mind the image that Belair created, Belair cannot monopolize the abstract concept of an absurdly large-headed, long limbed, attractive, fashionable woman.  He has a copyright over the expressions of that idea as they are specifically articulated in the Angel / Devil image, but he may not prevent others from expressing the same idea in their different ways.

**B.     Statute of Limitations and Laches**

Belair brought this suit on October 20, 2009[65] and MGA argues that any copyright violations from before October 20, 2006 are therefore barred by the statute of limitations.  MGA also argues that the equitable principle of laches in fact bars Belair from bringing any of his claims.  Belair disagrees.  Because I find that there was no copyright infringement, I do not reach these issues.

**V.     CONCLUSION**

For the reasons discussed above, MGA's motion for summary

---

movie, included two robots and Knight of Darkness highly reminiscent of the famous characters R2-D2, C-3PO, and Darth Vader.)

[64]     *Warner Bros., Inc. v. American Broadcasting Cos.*, 720 F.2d 231, 242 (2d Cir. 1983).

[65]     MGA 56.1 ¶ 17; Belair 56.1 ¶ 17.

judgment is granted.  The Clerk of the Court is directed to close this motion

[Docket No. 65] and this case.


SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:       New York, New York
             November 16, 2011

21

**Exhibit A**



**Exhibit B**



**Exhibit C**



**Exhibit D**



**Exhibit E**



**Exhibit F**



**- Appearances -**

**For Plaintiff:**
Gerard Albert Haddad, Esq.
Jennifer Lynn Bianrosa, Esq.
Joshua Paul Jaffe, Esq.
Dickstein Shapiro LLP
1622 Broadway
New York, NY 10019
(212) 277-6500


**For Defendant:**
Kenneth Alan Plevan, Esq.
Jordan Adam Feirman, Esq.
Skadden, Arps, Slate, Meagher & Flom LLP
Four Times Square, 42nd Floor
New York, NY 10036
(212) 735-3000

28