UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------- X
                               :

BERNARD BELAIR,              :
                               :
                 Plaintiff,    :
                               :         __OPINION AND ORDER__
          - against -       :
                               :         **09 Civ. 8870 (SAS)**
MGA ENTERTAINMENT, INC.,  :
and MATTEL, INC.,        :
                               :
                               :
                Defendants.   :
------------------------------------------------- X



SHIRA A. SCHEINDLIN, U.S.D.J.:

## I.    INTRODUCTION

            Bernard Belair, an artist and photographer, brought this copyright infringement action against MGA Entertainment, Inc., and Mattel, Inc.[1]  Belair alleged that the images he created and licensed to Steve Madden for a series of advertisements were unlawfully copied by MGA to design the Bratz line of dolls.[2] On November 16, 2011, this Court granted MGA's motion for summary

---

[1]      Mattel has since been dismissed from this action by Stipulation and Order dated August 3, 2011.  *See* Docket No. 78.

[2]      Knowledge of the factual background of this action is assumed.  *See Belair v. MGA Entertainment, Inc.*, No. 09 Civ. 8870, 2011 WL 5597370 (S.D.N.Y. Nov. 16, 2011) ("11/16/11 Order").

judgment.[3]  MGA now moves for an award of attorneys' fees and costs pursuant to

Section 505 of Title 17 of the United States Code ("Section 505") and Rule 54(d)

of the Federal Rules of Civil Procedure.[4]  For the reasons discussed below, MGA's

motion is denied.

## II.   BACKGROUND

The facts relevant to this action are fairly straight forward and

familiarity with the details is assumed.  Belair is the author and owner of a valid

copyright in the "Angel / Devil Girl," which he created and licensed to Steve

Madden for use in a series of advertisements.[5]  The parties did not dispute that

MGA copied Belair's Angel/Devil Image when creating the Bratz line of dolls.[6]

Carter Bryant, the creator of the Bratz line of dolls, saw the Angel/Devil Image,

---

[3]      See id. at *3-6.

[4]      MGA has only moved for a finding of liability under Section 505.  See
Memorandum of Law in Support of Defendant MGA Entertainment, Inc.'s Motion
for Determination of Liability for Attorneys' Fees Pursuant to Copyright Act
Section 505 dated November 30, 2011 ("MGA Mem.") at 6-7.

[5]      As used herein the "Angel/Devil Image" refers to Belair's copyrighted
image Registration No. VA1-146-749 entitled "Angel / Devil Girl" that was later
used by Steve Madden in an advertisement.  See 11/16/11 Order at *1.  See also
Angel/Devil Image, Ex. A to 11/16/11 Order.

[6]      See id. at *2 n. 23 (citing Memorandum of Law in Support of
Defendant MGA's Motion for Summary Judgment at 11).

and used it as inspiration when he created the initial drawings for the Bratz dolls.[7]

Bryant then gave his drawings and the Angel/Devil Image to Margaret Leahy, who

created the first sculpt of the body for the Bratz dolls.  Leahy testified that she

hung the Angel/Devil Image up in her studio and that she used it to create the

sculpts for the Bratz dolls.[8]

      The first Bratz dolls were distributed and sold in 2001.[9]  However,

MGA produced emails showing that as late as 2005 MGA was still trying to copy

Belair's images and was still using them for story boards for advertising

campaigns.[10]  Since 2001, the Bratz brand has achieved great commercial success,

selling more than 380 million products worldwide and earning over two billion

dollars in revenue in the United States.[11]

      In 2002, Belair saw the Bratz dolls and believed that they were very

---

[7]    *See* 1/25/11 Trial Tr. from second trial in the matter *Mattel v. MGA Entertainment, Inc.*, 04 Civ. 09049, previously pending in the Central District of California (the "Mattel v. MGA Litigation"), Ex. 3 to the Declaration of Gerard A. Haddad ("Haddad Decl."), at 50-51.

[8]    *See* 7/2/08 Trial Tr. from first trial in the Mattel v. MGA Litigation, Ex. 6 to Haddad Decl., at 6721-6722 and 4146-4147.  *See also* 11/17/10 Deposition Tr. of Margaret Leahy in the Mattel v. MGA Litigation, Ex. 7 to the Haddad Decl., at 43-44.

[9]    *See* 11/16/11 Order at *1.

[10]    *See* MGA-BELAIR 0047233 and 0047461, Ex. 8 to Haddad Decl.

[11]    *See* 11/16/11 Order at *1.

similar to his images.[12]  Belair did not sue because he felt that he did not have "enough information" and he "didn't know if [MGA] copied."[13]  Then in 2008, Belair saw a newspaper article about the Mattel v. MGA Litigation.[14]  The newspaper article mentioned that Bryant had admitted that he had in fact used Belair's images.[15]  On October 20, 2009, Belair commenced the instant action against MGA.

## III.  LEGAL STANDARD

Pursuant to Section 505, courts have the discretion to award reasonable attorneys' fees and costs in cases arising under the Copyright Act.[16]  The Supreme Court has held that attorneys' fees should be equally available to prevailing plaintiffs and prevailing defendants under Section 505.[17]  However, the

---

[12]    *See* 5/12/11 Belair Deposition Tr. ("5/12/11 Belair Dep."), Ex. 1 to Haddad Decl., at 240-241.

[13]    *Id.* at 236:12-21.

[14]    *See id.* at 244:3-19.

[15]    *See id*.

[16]    *See* 17 U.S.C. § 505.  Section 505 provides in relevant part that "[i]n any civil action under this title, the court in its discretion may allow the recovery of full costs by or against any party . . . . Except as otherwise provided by this title, the court may also award a reasonable attorney's fee to the prevailing party as part of the costs."

[17]    *See Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 533 (1994).

Supreme Court has rejected the automatic award of attorneys' fees to prevailing parties, instructing that such fees should be awarded "only as a matter of the court's discretion."[18]

There is no precise rule or formula for making [attorneys' fees] determinations, but instead equitable discretion should be exercised."[19]  Courts are instructed to exercise their discretion by evaluating "frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the case) and the need in the particular circumstances to advance considerations of compensation and deterrence."[20]  Furthermore, these "factors may be used only 'so long as [they] are faithful to the purposes of the Copyright Act.'"[21]  The two principal purposes behind the Copyright Act are securing a fair return for an author's creative labor and stimulating artistic creativity for the general public good.[22]  The Second Circuit has emphasized that the factor of "objective

------

[18]     *Id.* at 534.

[19]     *Matthew Bender & Co., Inc. v. West Pub. Co.*, 240 F.3d 116, 121 (2d Cir. 2001) (citing *Fogerty*, 510 U.S. at 534).

[20]     *Fogerty*, 510 U.S. at 533 n.19 (quotation marks omitted).

[21]     *Matthew Bender & Co.*, 240 F.3d at 121 (quoting *Fogerty*, 510 U.S. at 534).

[22]     *See Fogerty*, 510 U.S. at 526.

reasonableness" is to be accorded "substantial weight"[23] because "the imposition of a fee award against a . . . [party] with an objectively reasonable litigation position will generally not promote the purposes of the Copyright Act."[24]

Courts in this circuit have "generally concluded that only those claims that are clearly without merit or otherwise patently devoid of legal or factual basis ought to be deemed objectively unreasonable."[25]  However, it is not the rule that a party who is successful on summary judgment is automatically entitled to a finding that the other party's claims or defenses were objectively unreasonable.  Courts in this circuit have repeatedly rejected this argument.[26]  Even in cases analogous to

---

[23]   *Matthew Bender & Co.*, 240 F.3d at 121-22.

[24]   *Id.* at 122.

[25]   *Silverstein v. Penguin Putnam, Inc.*, No. 01 Civ. 309, 2008 WL 678559, at *3 (S.D.N.Y. Mar. 12, 2008) (quotation marks omitted).

[26]   *See CK Co. v. Burger King Corp.*, No. 92 Civ. 1488, 1995 WL 29488 (S.D.N.Y. Jan. 26, 1995) (summary judgment granted because  "there were no close similarities between protectable elements of the works" but court was "not prepared to say that plaintiff's contrary arguments were objectively unreasonable. To hold otherwise would establish a *per se* entitlement to attorney's fees whenever those issues are resolved against a copyright plaintiff. [The Court does] not think that is a correct construction of the law."); *Littel v. Twentieth Century-Fox Film Corp.*, No. 89 Civ. 8526, 1996 WL 18819 (S.D.N.Y. Jan. 18, 1996), *aff'd sub nom.*, *DeStefano v. Twentieth Century Fox Film Corp.*, 100 F.3d 943 (2d Cir. 1996) ("It is true that a finding that defendants are entitled to summary judgment is not the equivalent of a finding that plaintiff's claims are objectively unreasonable); *Chivalry Film Prods. v. NBC Universal, Inc.*, No. 05 Civ. 5627, 2007 WL 4190793, at *2 (S.D.N.Y. Nov. 27, 2007) ("the fact that a defendant has prevailed

this, where summary judgment was granted on the grounds that there were no close similarities between protectable elements of the works in question, there is not a "*per se* entitlement to attorney's fees whenever those issues are resolved against a copyright plaintiff."[27]   A finding that no reasonable juror could find in favor of one party is not the same as a finding that the losing party's claim was objectively unreasonable – something more is required.   A court should also decline to award attorneys' fees where the case is novel or close because such a litigation clarifies the boundaries of copyright law.[28]   "This is because such attorney fee awards may chill litigation of close cases, preventing the clear demarcation of the boundaries of copyright law."[29]

Additionally "[a]s a rule, a district court has broad discretion in awarding costs . . . and an award of costs may be set aside only for abuse of

---

on a motion to dismiss or on summary judgment does not require the court to award fees").

[27]     *CK Co.*, 1995 WL 29488, at *1.

[28]     *See Fogerty*, 510 U.S. at 527 ("Because copyright law ultimately serves the purpose of enriching the general public through access to creative works, it is peculiarly important that the boundaries of copyright law be demarcated as clearly as possible.").

[29]     *Chivalry Film Prods.*, 2007 WL 4190793, at *2.

7

discretion."[30]

## IV.   APPLICABLE LAW

### A.   Copyright Infringement

To establish copyright infringement, a plaintiff must prove: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original.[31]  The Second Circuit has further defined the second element of copyright infringement as requiring proof that: (1) the defendant copied from plaintiff's copyrighted work; and (2) the copying constituted an improper or unlawful appropriation.[32]

### B.   Scope of Copyright Protection

"The proposition that standard or common features are not protected is inconsistent with copyright law."[33]  Works do not have to be novel or unusual in order to obtain copyright protection.[34]  The only prerequisite to obtaining

---

[30]     *L-3 Communications Corp. v. OSI Sys., Inc.*, 607 F.3d 24, 30 (2d Cir. 2010) (citing *Lerman v. Flynt Distrib. Co.*, 789 F.2d 164, 166 (2d Cir. 1986)).

[31]     *See Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 361 (1991).

[32]     *See Arnstein v. Porter*, 154 F.2d 464, 468 (2d Cir. 1946).

[33]     *Mattel, Inc. v. Goldberger Doll Mfg. Co.*, 365 F.3d 133, 135 (2d Cir. 2004).

[34]     *See Feist Publ'ns, Inc.*, 499 U.S. at 345 (holding that originality requires "only that the author make the selection or arrangement independently

protection is that the work was independently created by the author and possesses "some minimal degree of creativity."[35]

      With respect to the protectability of human features, the Second Circuit has found that an author's expression of a human face, may be sufficient to justify copyright protection for the central expressive features of that face.[36]

> There are innumerable ways of making upturned noses, bow lips, and widely spaced eyes. Even if the record had shown that many dolls possess upturned noses, bow lips, and wide-spread eyes, it would not follow that each such doll - assuming it was independently created and not copied from others - would not enjoy protection from copying.[37]

      However, "the protection that flows from such a copyright is . . . quite limited."[38] The reason for limited protection is that "copyright does not protect ideas; it protects only the author's particularized expression of the idea."[39] "An upturned nose, bow lips, and wide eyes are the 'idea' of a certain type of doll

---

(*i.e.*, without copying that selection or arrangement from another work), and that it display some minimal level of creativity").

[35]    *Goldberger Doll Mfg. Co.*, 365 F.3d at 135.

[36]    *See id*.

[37]    *Id*.

[38]    *Id.*

[39]    *Id*. at 136.

face.  That idea belongs not to Mattel but to the public domain."[40]  "Mattel's copyright will protect its own particularized expression of that idea and bar a competitor form copying Mattel's realization of the Barbie features."[41]  However, "an imitator is free to make dolls expressing [the] same general idea."[42]

## V.    DISCUSSION

Here, MGA contends that it is entitled to attorneys' fees on three grounds.  *First*, MGA asserts that Belair's claims were objectively unreasonable because Belair: (1) sought protection for unprotectable ideas; (2) ignored the dissimilarities between his work and the finished Bratz dolls; (3) brought claims barred by the statute of limitations; and (4) lacked evidentiary support for his claims of substantial similarity.[43]  *Second*, MGA argues that Belair brought and pursued a frivolous claim in bad faith by: (1) waiting to bring the instant action; (2) pursuing his claims after the decision in the Mattel v. MGA Litigation; and (3) failing to define the products that infringed his drawing to MGA's satisfaction.[44]

---

[40]    *Id.*

[41]    *Id.*

[42].    *Id.* (citing *Mattel, Inc. v. Azrak-Hamway Intern., Inc.*, 724 F.2d 357, 360 (2d Cir. 1983)).

[43]    *See* MGA Mem., at 8-13.

[44]    *See id.* at 15-20.

*Third*, MGA argues that the interests of compensation, deterrence and the purposes of the Copyright Act dictate an award of attorneys' fees.[45]  Belair opposes the motion, arguing that his claim was not objectively unreasonable or frivolous and served the policies underlying the Copyright Act.

After evaluating the relevant facts, I find that an award of attorneys' fees and costs to MGA is inappropriate.  As set forth in the 11/16/11 Order, I granted summary judgment to MGA on the grounds that the finished Bratz dolls were not substantially similar to the Angel/Devil Image.  Although Belair's claim did not survive the motion for summary judgment, his claims were not objectively unreasonable nor do I find any evidence that Belair pursued his claims in bad faith.  MGA's arguments in connection with the interests of compensation and deterrence and the purposes of the Copyright Act are not persuasive.  For these reasons, MGA's motion is denied.

**A.    Belair's Claim Was Not Objectively Unreasonable**

At the time Belair commenced the instant action, Belair had a valid copyright in his images and already had proof that MGA actually copied the Angel/Devil Image.[46]  This fact was not disputed by MGA on its summary

---

[45]    *See id*. at 20-22.

[46]    *See* 11/16/11 Order at *1.  *See also* 5/12/11 Belair Dep., Ex. 1 to Haddad Decl., at 244:3-19.

judgment motion.[47]  The sole issue on summary judgment was whether the

protectable elements of Belair's images had been unlawfully appropriated by

MGA.  The key question was whether the elements that had actually been copied

by MGA were ideas or protected expression.

      MGA's argument that Belair's claim was objectively unreasonable

rests on its assertion that the law governing unprotectability of ideas and stock

themes has been well explored in this Circuit and Belair's claim did not present a

novel issue of law.[48]  While I agree that this case did not present novel issues of

law, it was nonetheless a close case.  The distinction between protectable

expression and an unprotectable idea is often complex and difficult to apply.[49]

      It is beyond cavil that only the particularized expression of a standard

---

[47]     *See* 6/11/11 Order at *2 n. 23.

[48]     *See* MGA Mem. at 11.

[49]     Interestingly, one of the Second Circuit cases cited by MGA dealt with the issue of substantial similarity of human features in connection with dolls and the Second Circuit noted that the distinction between ideas and expression, while important is "famously difficult to apply."  *Goldberger Doll Mfg. Co.*, 365 F.3d at 136.  *Accord Durham Indus., Inc. v. Tomy Corp.*, 630 F.2d 905, 912 (2d Cir. 1980) (quoting *Reyher v. Children's Tel. Workshop*, 533 F.2d 87, 91 (2d Cir. 1976) (discussing the "difficult task . . . to distill the nonprotected idea from protected expression.")).  Additionally the difficulty of applying the "idea expression dichotomy" was acknowledged by MGA's counsel at the June 7, 2011 pre-motion conference.  *See* 6/7/11 Tr., Ex. B to the 11/30/11 Declaration of Kenneth A. Plevan ("Plevan Decl.") at 18:18-22.

12

feature, such as the Angel/Devil Image here, is protectable.[50]  This is because there are "innumerable ways of making upturned noses, bow lips, and widely spaced eyes."[51]  Even if many drawings have similar features to the Angel/Devil Image, an independently created expression, such as the Angel/Devil Image, is entitled to protection from copying of its particularized expressions of those features.[52]  As I noted in the 11/16/11 Order "[Belair] has a copyright over the expression of that idea as they are specifically articulated in the Angel / Devil image."[53]  Belair was not able to prevail because he cannot "prevent others from expressing that same idea in their different ways."[54]  However, to the extent that Belair sought to protect the Angel/Devil Image, which was his particular expression of an idea, it was not objectively unreasonable for him to do so.  The decision to grant summary judgment in MGA's favor hinged on the fact that although there were many similarities between the Angel/Devil Image and the Bratz dolls, such as large

---

[50]    *See Goldberger Doll Mfg. Co.*, 365 F.3d at 135 ("The proposition that standard or common features are not protected is inconsistent with copyright law.").

[51]    *Id.*

[52]    *See id.* (holding that even a work that has common features is entitled to copyright protection, as long as the expression of those features is independently created and not copied from others.).

[53]    11/16/11 Order at *6.

[54]    *Id.*

heads, long limbs, and thin waists, the finished Bratz dolls had been molded, painted and dressed so that ultimately they no longer looked like the Angel/Devil Image.[55]

Although Belair failed to demonstrate that a reasonable juror could find that MGA's expression of these concepts was substantially similar to Belair's original Angel/Devil Image, this is not tantamount to a finding that his claim was objectively unreasonable. This is especially true given the evidence of copying and the fact that there were similarities between the two works.

In addition, the cases cited in support of MGA's argument that attorneys' fees should be imposed where the only similar elements between two works are unprotectable ideas, are distinguishable from this case.[56] Here, the Angel/Devil Image was entitled to copyright protection and there was some evidence of substantial similarity. As discussed at length in the 11/16/11 Order, "the similarities between the sculpt and the Devil/Angel Image are significant. If MGA were selling the sculpt as a final product, there might well be a triable issue

---

[55]     *See id.*

[56]     *See* MGA Mem., at 9.  By way of example, in *Earth Flag Ltd. v. Alamo Flag Co.*, the plaintiff's work was not even sufficiently original to warrant copyright protection, nor were the two works substantially similar. *See* 154 F. Supp. 2d 663, 665 (S.D.N.Y. 2001) (internal citations omitted).

14

of fact regarding copyright infringement."[57]

MGA also argues that Belair's delay in bringing this suit is further evidence of objective unreasonableness because all or part of his claims were barred by the applicable statute of limitations and/or laches. There is no support for the contention that the three year statute of limitations is evidence that Belair's claim was objectively unreasonable. The three year limitations period would not have barred his entire claim. At worst, Belair would have been prevented from recovery for the infringing acts outside the three year period.[58]

As to laches, it is unclear when Belair first knew he could sue MGA, since he was unaware that MGA copied his work until 2008.[59] Thus, waiting until 2009 was not unreasonable.[60]

## B.    There Is No Evidence that Belair Acted in Bad Faith

---

[57]    11/16/11 Order at *4.

[58]    *See Kwan v. Schlein*, 634 F.3d 224, 228 (2d Cir. 2011) ("[A]n infringement action may be commenced within three years of *any* infringing act, regardless of any prior acts of infringement; we have applied the three-year limitations period to bar only recovery for infringing acts occurring outside the three-year period.").

[59]    *See*  5/12/11 Belair Dep., Ex. 1 to Haddad Decl., at 244:3-19.

[60]    *See, e.g., Rapf v. Suffolk County,* 755 F.2d 282, 292 (2d Cir. 1985) ("[A] defendant must establish three elements to prevail on a laches defense: (1) that he lacked knowledge that the claim might be asserted against him; (2) that the plaintiff delayed asserting the claim despite the opportunity to do so; and (3) that he would be prejudiced if the claim were now allowed to go forward.").

There is also no evidence that Belair pursued his claims in bad faith. As previously mentioned, Belair had evidence of copying when he commenced this lawsuit. MGA's argument that the Ninth Circuit decision in the MGA v. Mattel Litigation should have estopped Belair from pursuing this suit is not persuasive. Belair was not a party to that litigation, nor were the decisions of the Ninth Circuit binding upon him or this Court. Moreover, the works at issue in that case were different.[61] MGA's reliance on cases like *Hudson v. Universal Studios, Inc.*,[62] to buttress this argument is misplaced. In *Hudson*, for example, the plaintiff was aware of the weaknesses of his claim because of previous decisions against him.[63]

MGA also argues that Belair's claims were frivolous because he did not define which Bratz dolls infringed on which images. However, the materials attached to MGA's motion demonstrate that Belair's counsel identified which of Belair's copyrights were allegedly infringed by various Bratz products.[64] Additionally, Belair eventually narrowed his claims. In August of 2010, Belair was claiming that over fourteen thousand of MGA's products were potentially

---

[61]   *See* 6/7/11 Tr., Ex. B to Plevan Decl., at 20:5-19; MGA Mem. at 16.

[62]   No. 04 Civ. 6997, 2009 WL 536564 (S.D.N.Y. Mar. 4, 2009).

[63]   *See id.*

[64]   *See* 6/1/11 Letter, Ex. C to the Plevan Decl.

infringing.[65]  By June of 2011, Belair was only claiming that the Bratz dolls made

from the sculpt at issue, the 2010 modified sculpt, and the Lil Bratz dolls were

infringing.[66]  One of the core purposes of discovery in any civil action is to narrow

the issues to be presented at trial.[67]  The fact that Belair did so is not evidence of

bad faith or an improper motive.

     MGA also argues that the extent of damages sought by Belair

demonstrates bad faith.  There is  no support in the record for this contention.[68]

## C.    Policy Consideration Do Not Dictate an Award of Fees to MGA

     The decision to deny MGA's application for an award of attorneys'

fees pursuant to Section 505 furthers the purposes of the Copyright Act.  Belair had

a reasonable litigation position and his claims were not devoid of factual support.

It was not disputed by the parties that MGA actually copied and utilized the

Angel/Devil Image when creating the Bratz line of dolls.  Additionally, as noted in

---

[65]    *See* MGA Mem., at 3 (citing 8/10/10 Tr., Ex. A to Plevan Decl., at
12).

[66]    *See* 6/1/11 Letter, Ex. C to Plevan Decl.

[67]    *See, e.g., Baush Mach. Tool Co. v. Aluminum Co. of Am.*, 63 F.2d 778,
781 (2d Cir. 1933).

[68]    In *Baker v. Urban Outfitters, Inc.*, 431 F. Supp. 2d 351 (S.D.N.Y.
2006), cited by MGA, the plaintiff's claim for extensive actual damages even after
discovery revealed that the damages were much less, and where the defendant had
offered to pay him the actual damages to settle, was objectively unreasonable.

the 11/16/11 Order, there were some parts of the two works that were substantially similar. MGA prevailed on summary judgment because the protectable elements of the Angel/Devil Image were not substantially similar to the finished Bratz dolls. However, Belair's claim was not objectively unreasonable, and without evidence of bad faith, the imposition of attorneys' fees would not promote the purposes of the Copyright Act.[69]

The distinction between protectable expression and an idea is often complex and the test can be difficult to apply. The distinction is not so obvious here that there is any need for deterrence. Moreover, given the proof of actual copying by MGA, I decline to compensate it for the attorneys' fees it incurred in defending this action.

## VI.   CONCLUSION

For the foregoing reasons, MGA's motion is denied. The Clerk of the Court is directed to close this motion [Docket # 90] and this case.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:      New York, New York
            May 9, 2012

---

[69]      *See Matthew Bender & Co.*, 240 F.3d at 122.

18

**-Appearances-**

**For Plaintiff:**

Gerard Albert Haddad, Esq.
Jennifer Lynn Bianrosa, Esq.
Joshua Paul Jaffe, Esq.
Dickstein Shapiro LLP
1622 Broadway
New York, NY 10019
(212) 277-6500

**For Defendant:**

Kenneth Alan Plevan, Esq.
Jordan Adam Feirman, Esq.
Skadden, Arps, Slate, Meagher & Flom LLP
Four Times Square, 42nd Floor
New York, NY 10036
(212) 735-3000

19